UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Yong Du, Xiaoying Luo, individually and on behalf of all other employees similarly situated,

                Plaintiffs,

- against -

DJ KITCHEN LLC. dba DJ KITCHEN, Nan Zhao aka Lan Zhao, Joe Chen, "A Ming,"

                Defendants.

CIVIL ACTION
No. 2:21-cv-02847-CMR

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**

HANG & ASSOCIATES, PLLC
136-20 38th Avenue, Suite 10G Flushing, NY 11354
(718) 353-8588
jhang@hanglaw.com

Attorneys for Plaintiffs Yong Du and Xiaoying Luo

1

**PRELIMINARY STATEMENT**

Plaintiffs Yong Du and Xiaoying Luo, by their attorney, submit this Memorandum of Law in Support of their Motion for Default Judgment ("Motion") pursuant to Federal Rule of Civil Procedure 55 against the Defendants DJ KITCHEN LLC. dba DJ KITCHEN ("DJ KITCHEN"), Nan Zhao aka Lan Zhao, Joe Chen, and "A Ming."

**PROCEDURAL HISTORY AND BASIS FOR DEFAULT**

Plaintiffs commenced this action with the filing of a Summons and Complaint ("Compl.") on June 26, 2021. (A copy of the Summons and Complaint is attached as **Exhibit A**. Plaintiffs' Counsel Yuezhu Liu's Affirmation ("Liu Aff.") is attached as **Exhibit C**. Plaintiff Yong Du's Affidavit ("Du Aff.") and Plaintiff Xiaoying Luo's Affidavit ("Luo Aff.") are attached as **Exhibit D** to provide the procedural history and the factual basis for their claims.)

As discussed below, the original Summons and Compliant has been served on all Defendants pursuant to Fed. R. Civ. P. 4.

The Defendants against whom Plaintiffs seek default judgment were served with the Summons and Complaint on July 12, 2022. They were served at 4040 City Ave, Philadelphia, PA 19131. This is reflected in the affidavit of service provided by Francis Nicholas DiMeo III, a licensed process server in the State of Philadelphia. As recited in the affidavit, Mr. DiMeo delivered copies of these documents to "ALEX," who specifically identified himself to Mr. DiMeo as an individual in charge of the business and is authorized to accept service on behalf of the Defendants. (A copy of the Affidavit of Service on Defendants is attached as **Exhibit B**.)

Each Defendant was served and the time for the Defendants to answer or move with respect to the Summons and Complaint has expired and the Defendants have failed to take action. At no time since the Defendants were served with the Summons and Complaint have, they or an attorney

acting on their behalf contacted Plaintiffs or anyone in Plaintiffs' attorney's office seeking an extension of time to response to the Verified Complaint, or to discuss any matter related to this action. Since the time for the Defendants to plead has not be extended and they have failed to respond to the Summons and Complaint, they are now in default. Counsel for Plaintiffs filed a Request with the Clerk of Courts, seeking entry of default against all Defendants. On July 20, 2022, the Clerk of Courts entered default against all Defendants.

## STATEMENT OF FACTS

Plaintiffs filed the Complaint in this action on June 26, 2021, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Pennsylvania Minimum Wage Act of 1968 ("PMWA"), 43 P.S. § 333.101 *et seq.*, and the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1, *et seq*.

As set forth in the Complaint, Plaintiffs performed a variety of services inside the restaurant. Defendants regularly processed payments by credit card, which caused financial information to be transmitted electronically across state lines. Plaintiffs and Defendants thus engaged in interstate commerce. (Compl. ¶ 55.)

Individual Defendants Nan Zhao aka Lan Zhao and Joe Chen exercised control over the terms and conditions of employment for employees of Entity Defendant, including Plaintiffs. (Compl. ¶ 13-14.) (Du. Aff. ¶ 4.) (Luo. Aff. ¶ 4.)

Specifically, Individual Defendants Nan Zhao aka Lan Zhao and Joe Chen at all relevant times had the power to: (i) hire and fire employees, (ii) determine rates and methods of pay, (iii) determine work schedules, (iv) supervise and control the work of the employees, and (v) otherwise affect the quality of the employees' employment. (Compl. ¶ 13-14.) (Du. Aff. ¶ 4.) (Luo. Aff. ¶ 4.)

Plaintiff Yong Du was employed as a line cook and kitchen helper at DJ KITCHEN from approximately March 21, 2019, until May 9, 2021. (Compl. ¶ 25-26.) (Du. Aff. ¶ 3.)

Defendants paid Plaintiff Yong Du a monthly salary of $5,200 from March 21, 2019, to March 2020. During this period, Defendants paid him at the end of each month by check for approximately $870 and cash for the remaining. From April 2020 to May 9, 2021, Defendants paid Plaintiff Yong Du a daily salary of $200. During this period, Defendants paid him every two weeks by check for approximately $1,000 and cash for the remaining. Defendants required him to sign on a notebook for each payment they received. (Compl. ¶ 28-30.) (Du. Aff. ¶ 15-16.)

Plaintiff Yong Du worked six (6) days a week from March 21, 2019, to March 2020, averaging approximately 65.5 hours per week. From April 2020 to mid-June 2020, he worked five (5) days a week, averaging approximately 54.5 hours per week. From mid-June 2020 to the end of September 2020, he worked four (4) days a week, averaging approximately 43.5 hours per week. From October 5, 2020, to the end of March 2021, he worked five (5) days a week, averaging approximately 54.5 hours per week. From the end of March 2021 to May 9, 2021, he worked six (6) days a week, averaging approximately 65.5 hours per week. (Compl. ¶ 31-34.) (Du. Aff. ¶ 10-14.)

Plaintiff Xiaoying Luo was employed as a line cook and kitchen helper at DJ KITCHEN from approximately March 22, 2019, until September 30, 2020. He took a two-week break from his employment in late 2019. (Compl. ¶ 37-38.) (Luo. Aff. ¶ 3.)

Defendants paid Plaintiff Xiaoying Luo a monthly salary of $2,500 at the end of each month by check for approximately $850 and cash for the remaining. Defendants required him to sign on a notebook for each payment they received. (Compl. ¶ 39.) (Luo. Aff. ¶ 10.)

Throughout his employment, Plaintiff Xiaoying Luo worked six (6) days a week, averaging approximately 66 hours per week. (Compl. ¶ 40.) (Luo. Aff. ¶ 9.)

Plaintiffs' net compensation was far less than the legal overtime compensation for hours worked over 40 per week. There were no time records to track employees' working hours. (Compl. ¶ 47, 51.) (Du. Aff. ¶ 17.) (Luo. Aff. ¶ 11.)

## ARGUMENT

**I.  The Court Should Enter Default Judgment Against All Defendants.**

When a party has defaulted and met all of the procedural requirements, the decision to render default judgment rests in the sound discretion of the district court. United States v. $55,518.05 in U.S. currency, 728 F.2d 192, 194 (3d Cir. 1984). The district court will consider the following three factors in determining whether a default judgment is proper: (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; (3) whether the default was the result of the defendant's culpable conduct. See Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000) (*citing* $55,518.05 in U.S. Currency). Application of this test demonstrates that a default judgment against Defendants is warranted here.

1. Plaintiffs will be prejudiced by a decision denying a default judgment.

The case cannot proceed without the participation of Defendants. According to EDPA Local Rule 53.2, after an answer is filed in a case, the arbitration clerk shall send a notice to counsel setting forth the date and time for the arbitration trial. The date of the arbitration trial set forth in the notice shall be a date about one hundred twenty (120) days from the date the answer was filed. However, because no answer has been filed, no schedule has been sent. Pursuant to Rule 26(d), Plaintiffs cannot take discovery until after the Rule 26(f) conference. Because Defendants have

5

refused to respond to Plaintiffs' request to have a Rule 26(f) conference, there has been no such conference. Thus, Plaintiffs have not been able to even begin the discovery process.

Plaintiffs are presently suffering prejudice from delay of this case, including ongoing harm from the lack of wage they should have been paid, the possible dissipation of Defendants' assets, possibly losing contact with potential contacts and the possible loss of records by both parties.

2. <u>Defendants failed to assert any defenses to Plaintiffs' claims and any anticipated defenses would be wholly without merit.</u>

Defendants are clearly on notice of the need to participate in the case; yet, Defendants have refused to participate. Defendants were properly served on July 12, 2022, at 4040 City Ave, Philadelphia, PA 19131. Defendants failed to provide a proper answer under Fed. R. Civ. P. 8.

The time for Defendants to file an answer to the Complaint has expired. As for the date of the filing of the request for entry of the default, no answer (or motion to dismiss or motion for summary judgment) has been filed. Under this prong of the test for entry of default judgment, it is the responsibility of the defendants to "show that [they have] a defense to the action which at least has merit on its face." <u>Emcasco Ins. Co. v. Sambrick</u>, 834 F.2d 71, 74 (3d Cir. 1987). Defendants have not made a showing of any defense.[1]

Even if Defendants were to file a proper answer, Defendants have no meritorious defense. Defendants violated overtime and owed Plaintiffs back wages, but Defendants have deliberately refused to pay. Defendants also failed, pursuant to Pa. Minimum Wage Act, to maintain accurate records of the hours that the Plaintiffs worked: "Every employer of employes shall keep a true and accurate record of the hours worked by each employee", 43 P.S. § 333.108. Even if, *arguendo*,

---

[1] Plaintiffs submit that their burden of proof on this element of the test for default judgment must of necessity be modest. As Judge Rendell noted in her concurring opinion in <u>Hill v. Williamsport Police Department</u>, "it makes little sense for a plaintiff to be required to demonstrate that the defendant does not have meritorious defenses when the defendant has failed to respond." 69 F.App'x. 49, 56 (3d Cir. 2003) (concurring).

Defendants wished to argue that Plaintiffs did not work the hours that they say he did, Defendants would be under an obligation to turn over such accurate time records in their Rule 26(a) disclosures. Defendants have not disclosed any such records, or even hinted that such records exist.

   3. Defendants' delay is due to culpable misconduct.

In the context of a motion for default judgment, "culpable conduct means actions taken willfully or in bad faith." Gross v. Stereo Component Systems, Inc., 700 F.2d 120, 123-124 (3d Cir. 1983). "Reckless disregard for repeated communications from plaintiffs and the court… can satisfy the culpable conduct standard." Hritz v. Woma Corp., 732 F.2d 1178, 1183 (3d Cir. 1984). Where a lack of culpable conduct has been found, it has "typically involved innocent mishaps or mere mistakes", Nationwide Mut. Ins. Co v. Starlight Ballroom Dance Club, Inc., 175 Fed.Appx. 519, 523 (3d Cir. 2006), whereas repeated failure to respond to correspondence "is the kind of reckless disregard for repeated communications regarding a suit that establishes a defendant's culpability." Id.

Defendants were all served by a licensed process server. Defendants have completely – and willfully – failed to meet their obligations to cooperate in scheduling a 26(f) conference and making 26(a) disclosures and having been given months to do so. Their failure to participate in this litigation thus qualifies as culpable misconduct.

   4. Plaintiffs have a good and meritorious claim against all Defendants.

Plaintiffs were employed, pursuant to an oral employment agreement, to perform tasks at DJ KITCHEN, including cooking and preparing ingredients and appetizers which handled food supplies and equipment moved in interstate commerce. (Compl. ¶ 26, 38.) (Du. Aff. ¶ 3.) (Luo. Aff. ¶ 3.) Regularly engaging in the handling of generic products moved in interstate commerce is a form of participation in interstate commerce which implicates individual coverage under the

FLSA, as several recent federal district court decisions have found. See, e.g., Locke v. St. Augustine's Episcopal Church, 690 F. Supp. 2d 77, 88 (E.D.N.Y. 2010); Ethelberth v. Choice Sec. Co. 91 F. Supp. 3d 339, 355 (E.D.N.Y. 2015) ("Enterprise coverage applies so long as some of the employees wear uniforms or use items such as radios, books, flashlights, clipboards, brooms, bags, and cleaning supplies that have moved in interstate commerce."). Plaintiffs were therefore covered employees pursuant to the FLSA, 29 U.S.C. §§ 203(e)(1), the PMWA, 43 P.S. § 333.103(h), and the WPCL.[2]

DJ KITCHEN, as an entity which suffered or permitted Plaintiffs and others to perform services for handling food supplies and equipment in its restaurant establishment, is covered as an employer under the FLSA, 29 U.S.C. § 203(g), PMWA, 43 P.S. § 333.103(f), and WPCL, 43 P.S. § 260.2.1. The individual defendants, as the owners and directors of DJ KITCHEN, and the persons who made the oral agreement with Plaintiffs and directed Plaintiffs in what tasks to perform, and had an active role in decision-making for DJ KITCHEN, were persons acting directly or indirectly in the interests of DJ KITCHEN. (Compl. ¶ 13-14.) (Du. Aff. ¶ 4.) (Luo. Aff. ¶ 4.) They were therefore also employers subject to individual liability under the FLSA, 29 U.S.C. § 203(d), PMWA, 43 P.S. § 333.103(g), and WPCL, 43 P.S. § 260.21. See Hirsch v. EPL Technologies, Inc., 910 A.2d 84, 88 (Pa.Super. 2006) (holding active role in decision making grounds to hold an agent or officer personally liable for unpaid wages pursuant to WPCL).

As employees engaged in interstate commerce, Plaintiffs were entitled to be compensated by Defendants at the legal minimum wage for the first forty hours worked in a given week, 29

---

[2] The WPCL, 43 P.S. § 260.1 et seq. does not define "employee"; the Pennsylvania courts have used the definitions found in the state Unemployment Compensation and Worker's Compensation Acts. See Morin v. Brassington, 871 A.2d 844, 849 (Pa.Super. 2005). Under the Unemployment Compensation definition, "'employe' means every individual… who is performing or… has performed services for an employer in an employment subject to this act." 43 P.S. § 753(i).

8

U.S.C. § 206(a), 43 P.S. §§ 333.104(a), (a.1), and a one and a half times their regular rate for all hours worked over forty in a given week, 29 U.S.C. § 207(a), 43 P.S. § 333.104(c). Any private agreement to work for less than the legal minimum wage is illegal and void pursuant to the FLSA, see Lynn's Food Stores v. U.S. Department of Labor, 679 F.2d 1350. 1352 (11th Cir. 1982), and PMWA, 43 P.S. § 333.113.

Plaintiffs' wages were due on the regular pay day after they earned them, and are long overdue. "All wages… earned in any pay period shall be due and payable within [a contractually specified period] or, if not so specified,… within 14 days from the end of such pay period." WPCL, 43 P.S. § 260.3(a).

Plaintiffs are entitled to file suit to recover the wages that they should have been paid, in addition to statutory penalties, pursuant to the FLSA, 29 U.S.C. § 216(b), PMWA, 43 P.S. § 333.13, and WPCL, 43 P.S. § 260.9a.

Employers are required to keep records for each employee of, among other things, the regular rate of pay, the number of hours worked daily and weekly, total wages due each week, deductions from wages, and total wages paid. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2; 43 P.S. § 333.108; 34 Pa. Code § 231.31(a)(6). The Supreme Court of the United States has clearly stated in Anderson v. Mt. Clemens Pottery Company and its progeny, that, in the absence of employer-kept records, an employee merely needs to bring forth enough evidence for the court to make a just and reasonable inference as to their hours worked and pay owed. 328 U.S. 680, 687-88, 66 S.Ct. 1187, 1192 (1946). The employee can meet their burden by simply testifying to their hours.

## II. Defendants are Liable to Plaintiffs for Unpaid Wages and Other Statutory Violations

1. Introduction

9

Plaintiff Yong Du claims $88,977.76 in unpaid wages and an additional amount equal to the unpaid wages as liquidated damages; thus, his total damages for unpaid wages are $177,955.52. He claims $22,244.45 in damages pursuant to the WPCL, in addition to the wages and liquidated damages sought pursuant to FLSA and PMWA.

Plaintiff Xiaoying Luo claims $43,181.57 in unpaid wages, and an additional amount equal to the unpaid wages as liquidated damages; thus, his total damages for unpaid wages are $86,363.14. He claims $10,795.39 in damages pursuant to the WPCL, in addition to the wages and liquidated damages sought pursuant to FLSA and PMWA.

Therefore, Plaintiffs' total damages are $297,358.50. (Damage calculation is attached as **Exhibit E**.)

Plaintiffs did not keep a precise calendar of their days of work; they have a very firm idea of their standard schedule, but they do not have a precise recall of the specific dates that they worked in 2019-2021. Plaintiff Yong Du worked six (6) days a week with Monday off from March 21, 2019, to March 2020; five (5) days a week with Monday and Thursday off from April 2020 to mid-June 2020; four (4) days a week with Monday, Thursday and Saturday off from mid-June 2020 to the end of September 2020; five (5) days a week with Monday and Thursday off from October 5, 2020, to the end of March 2021; and six (6) days a week with Monday off from the end of March 2021 to May 9, 2021. Plaintiff Xiaoying Luo worked six (6) days a week with Sunday off from March 22, 2019, to September 30, 2020, and took a vacation from October 21, 2019, to November 10, 2019. Thus, Plaintiffs know how many hours they worked in an average work week, but they cannot say precisely which dates they worked. Defendants, as the employers, had responsibilities for recordkeeping pursuant to FLSA and PWMA, but as the Court is aware, Defendants have defaulted without ever providing disclosures or discovery in this case.

In the Motion, Plaintiffs strive to provide, as closely as possible, the details in Plaintiffs' estimated hours worked, damages claimed for violation of state and federal unpaid wage laws and damages claimed for violation of WPCL.

2. <u>Damages</u>

   a. **Plaintiffs' estimated hours worked**

Plaintiff Yong Du's schedule was fairly consistent: he worked from 11:00 am to 10:00 pm from Tuesday to Saturday and from 11:30 am to 10:00 pm on Sunday. He specifically recalls that he worked an average of 65.5 hours per week in each of the weeks from March 21, 2019, to March 2020; an average of 54.5 hours per week in each of the weeks from April 2020 to mid-June 2020; an average of 43.5 hours per week in each of the weeks from mid-June 2020 to the end of September; an average of 54.5 hours per week in each of the weeks from October 5, 2020 to the end of March 2021; and an average of 65.5 hours per week in each of the weeks from the end of March 2021 to May 9, 2021.

Although there was slight variation, Plaintiff Xiaoying Luo's schedule was consistent overall: he worked about eleven (11) hours a day and six (6) days a week. So, his estimated hours for each seven-day work week during his employment with Defendants were the same: 66 hours.

   b. **Damages claimed for violation of state and federal unpaid wage laws**

Plaintiffs were entitled to be paid, through wages, one and a half times their regular rate of pay for any hours they worked over forty hours in a given seven-day work week. For the purpose of calculating overtime, the regular rate "is the amount of remuneration determined under subsection (a) divided by 40 hours." 34 Pa. Code § 231.43 (g). To the extent that Plaintiffs' wages did not bring them up to the legal overtime rate, Defendants were responsible for making up the difference.

From March 21, 2019, to March 2020, when working a regular schedule of 65.5 hours per week, Plaintiff Yong Du's regular rate is [5200 x 12 / 52 / 40 =] $30, and he was entitled to [30 x .5 x (65.5 – 40) =] $382.5 as an overtime premium, for each seven-day period that he worked for Defendants. From April 2020 to mid-June 2020, when working a regular schedule of 54.5 hours per week, Plaintiff Yong Du's regular rate is [200 x 5 /40 =] $25, and he was entitled to [25 x .5 x (54.5 – 40) =] $181.25 as an overtime premium, for each seven-day period that he worked for Defendants. From mid-June 2020 to the end of September 2020, when working a regular schedule of 43.5 hours per week, Plaintiff Yong Du's regular rate is [200 x 4 / 40 =] $20, and he was entitled to [20 x .5 x (43.5 – 40) =] $35 as an overtime premium, for each seven-day period that he worked for Defendants. From October 5, 2020, to the end of March 2021, when working a regular schedule of 54.5 hours per week, Plaintiff Yong Du's regular rate is [200 x 5 / 40 =] $25, and he was entitled to [25 x .5 x (54.5 – 40) =] $181.25 as an overtime premium, for each seven-day period that he worked for Defendants. From the end of March 2021 to May 9, 2021, when working a regular schedule of 65.5 hours per week, Plaintiff Yong Du's regular rate is [200 x 6 /40 =] $30, and he was entitled to [30 x .5 x (65.5 – 40) =] $382.5 as an overtime premium, for each seven-day period that he worked for Defendants.

Thus, for the 53.7 weeks that he worked 65.5 hours pe week for Defendants from 2019 to 2020, pursuant to FLSA and PMWA, Plaintiff Yong Du is owed [(30 x 65.5 + 382.5 – 5200 x 12 / 52) x 53.7 =] $61,620.75 in unpaid wages, and, pursuant to FLSA, 29 U.S.C. §216(c), an additional amount equal to the unpaid wages, $61,620.75, as liquidated damages. For the 10.7 weeks that he worked 54.5 hours per week for Defendants in 2020, Plaintiff Yong Du is owed [(25 x 54.5 + 181.25 – 200 x 5) x 10.7 =] $5,818.13 in unpaid wages and $5,818.13 as liquidated damages. For the 15.1 weeks that he worked 43.5 hours per week for Defendants in 2020, Plaintiff

Yong Du is owed [(20 x 43.5 + 35 – 800) x 15.1 =] $1,585.5 in unpaid wages and $1,585.5 as liquidated damages. For the 25.3 weeks that he worked 54.5 hours per week for Defendants from 2020 to 2021, Plaintiff Yong Du is owed [(25 x 54.5 + 181.25 – 1,000) x 25.3 =] $13,756.88 in unpaid wages and $13,756.88 as liquidated damages. For the 5.4 weeks that he worked 65.5 hours per week for Defendants in 2021, Plaintiff Yong Du is owed [(30 x 65.5 + 382.5 – 1,200) x 5.4 =] $6,196.5 in unpaid wages and $6,196.5 as liquidated damages. Thus, Plaintiff Yong Du's total damages for unpaid wages are [61,620.75 x 2 + 5,818.13 x 2 + 1,585.5 x 2 + 13,756.88 x 2 + 6,196.5 x 2 =] $177,955.52.

From March 22, 2019, to September 30, 2020, when working a regular schedule of 66 hours per week, Plaintiff Xiaoying Luo's regular rate is [2,500 x 12 /52 / 40 =] $14.42, and he was entitled to [14.42 x .5 x (66 – 40) =] $187.46 as an overtime premium, for each seven-day period that he worked for Defendants. He took a 2.9-week vacation in 2019. Thus, for the [79.7 – 2.9 =] 76.8 weeks that he worked for Defendants, pursuant to FLSA and PMWA, Plaintiff is owed [(14.42 x 66 + 187.46 – 576.92) x 76.8 =] $43,181.57 in unpaid wages, and, pursuant to FLSA, 29 U.S.C. §216(c), an additional amount equal to the unpaid wages, $43,181.57, as liquidated damages. Thus, Plaintiff Xiaoying Luo's total damages for unpaid wages are [43,181.57 x 2 =] $86,363.14.

In sum, Plaintiffs' total damages for unpaid wages are [177,955.52 + 86,363.14 =] $264,318.66.

  c. **Damages claimed for violations of WPCL**

The Pennsylvania Wage Payment and Collection Law ["WPCL"] requires that employers must pay "all wages… due to his employees on regular paydays." 43 P.S. §260.3(a). When wages remain unpaid longer than thirty days, and no good-faith dispute of the amount payable exists, the employee is entitled to damages in the amount of the unpaid wages, 43 P.S. §260.9a(b), and an

additional amount equal to twenty-five percent of the total amount of wages due as liquidated damages, §260.10. Plaintiffs' total amount of wages due is [264,318.66 / 2 =] $132,159.33.

Under Pennsylvania law, plaintiffs can obtain both a compensatory award, such as prejudgment interest, under the FLSA or PMWA, and also a punitive award under the WPCL. See Andrews v. Cross Atlantic Capital Partners, Inc., 158 A.3d 123, 139 (Pa. Super. 2017). Liquidated damages awarded pursuant to FLSA are considered compensatory, not punitive, see Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 707, 65 S.Ct. 895, 89 L.Ed. 1296 (1945), while liquidated damages awarded pursuant to the WPCL are "intended to be a disincentive or penalty for employers to withhold wages in bad faith", Andrews, 158 A.3d at 136. Plaintiffs, therefore, presuming they prevail in their claim for unpaid wages under FLSA and PMWA, do not seek a duplicative award of unpaid wages under the WPCL, but they do seek an award of liquidated damages. They therefore claim [132,159.33 x .25 =] $33,039.83 in damages pursuant to the WPCL, in addition to the wages and liquidated damages sought pursuant to FLSA and PMWA.

## III. The Court Should Grant Plaintiffs Attorneys' Fees and Costs

In anticipation of entry of default judgment in Plaintiffs' favor, Plaintiffs petition the Court to award their attorneys at Hang & Associates, PLLC fees and costs in the amount of $33,817.

1. Attorneys' Fess

The FLSA provides in pertinent part, "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Attorneys' fees and costs are also remedies to be awarded under the PMWA, 43 P.S. § 333.113, and the WPC, 43 P.S. § 260.9a(f). Attorney's fees are awarded even where the defendants have defaulted. See, e.g., Santana v.

Latino Express Restaurants, Inc., 198 F. Supp. 3d 285, 298 (S.D.N.Y. 2016); Ventura v. L.A. Howard Construction Co., 134 F. Supp. 3d 99, 106 (D.D.C. 2015).

According to the Supreme Court, "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The result of that calculation is called the lodestar; the lodestar is strongly presumed to yield a reasonable fee. City of Burlington v. Dague, 505 U.S. 557 (1992).

**a. Hourly Rates**

Ordinarily when determining appropriate rates, courts first refer to those rates which the attorneys involved charge to their fee-paying clients on a regular basis. In the present case, the law firm Hang & Associates, PLLC represented Plaintiffs from inception. As part of the representation of Plaintiffs, Mr. Jian Hang and his staff, inter alia, evaluated the case; conducted multiple rounds of interviews with Plaintiffs, prepared and filed the Complaint; created spreadsheet for Plaintiff calculating his damages; reviewed relevant records, including time and pay records to the extent available for Plaintiff; and drafted this motion.

To calculate the lodestar, Plaintiffs' counsel uses a rate of $350 per hour for the principal attorney, Jian Hang, a rate of $325 for the associates, Jiajing Fan and Yuezhu Liu, a rate of $275 for the law clerk, Jie Shi and a rate of $150 for the paralegal, Ge Yan and. Hang is a 2005 graduate of University of Arkansas at Little Rock, William H. Bowen School of Law, who has focused his practice almost exclusively on employment law litigation for the past decade. Fan is a 2018 graduate of University of Wisconsin school of law who has focused on employment law. Liu is a 2019 graduate of University of Maryland Francis King Carey School of Law who has

also focused her practice on employment law. Jie is a 2021 graduate of University of Vanderbilt School of law and Yan is a 2019 graduate of Washington University in St. Louis Law School.

### b. Hours Expended

In support of this motion, Plaintiffs have submitted detailed, contemporaneously produced time records specifying the date of work performed, the attorney performing the work, the nature of the work, and the amount of time spent (see fee schedules attached to as **Exhibit F**). These submissions readily meet this Circuit's requirement of the degree of specificity required of a party seeking attorneys' fees. Specificity is required only to extent necessary to determine if the hours claimed are unreasonable for the work performed. Rode v. Dellarciprete, 892 F. 2d 1177, 1190 (3d Cir. 1990).

Due to the default of Defendants, the time involved in this case was not as great as it would have been if the case had gone to trial. Nevertheless, counsel was obliged to spend time unilaterally complying with the requirements of Fed. R. Civ. P 26, preparing for the possibility of discovery (until it became clear that Defendants would not participate in this case), and then pursuing both entry of default and default judgment against Defendants. To calculate the lodestar, Hang & Associates, PLLC, has spent around 116 hours on the case.

There was no time for which compensation is now requested in this case that was "excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 433. All the time submitted was reasonably necessary to litigate this matter for Plaintiffs and should be approved by this Court.

2. Costs

**Plaintiff spent $402 to file this case in this Court.** The costs were necessarily incurred, and Plaintiffs should be awarded their costs in full.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that their Motion for Default Judgment against Defendants DJ KITCHEN LLC. dba DJ KITCHEN, Nan Zhao aka Lan Zhao, Joe Chen, and "A Ming," be granted for want of answer, and that the proposed order be entered.

Dated: Flushing, New York
       January 17, 2023

HANG & ASSOCIATES, PLLC.

/s/ Yuezhu Liu

_____

Yuezhu Liu, Esq.
136-20 38th Ave., Suite 10G
Tel: 718.353.8588
Fax: 718.353.6288
E-mail: yliu@hanglaw.com
*Attorney for Plaintiffs*